UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CASE NO. 5:06-cv-00210-R

**CLYDE EARL ROBERTS**                                                                   **PLAINTIFF**

**v.**

**INGRAM BARGE COMPANY**                                                          **DEFENDANT**

**MEMORANDUM OPINION**

This matter is before the Court on Defendant's Motion for Summary Judgment (DN 19). Plaintiff has responded (DN 23), and Defendant has replied (DN 24). This matter is now ripe for adjudication. For the reasons that follow, Defendant's Motion is GRANTED.

BACKGROUND

This matter arises out of an injury suffered by Plaintiff Clyde Earl Roberts on or about April 16, 2004, while working on one of Defendant Ingram Barge Company's ("Ingram") vessels. For the purposes of summary judgment, the following facts are undisputed. From March 2001 to the date of his injury Roberts was employed primarily as a barge welder and repair person at Ingram's Grand River Terminal facility on the Tennessee River. The facility during that time consisted of a dock area and six barge fleets. The dock and four of the fleets were located on a cove of Kentucky Lake. Two additional fleets were located on Kentucky Lake proper, one approximately one and one-half miles up-river from the dock and another approximately two miles down-river from the dock.

Roberts's welding and repair duties involved placing new wires on barges and repairing barges. His work hours were from 7:00 a.m. until 5:00 p.m. Roberts started each workday from the dock, where he was assigned to certain barges to repair in the various fleets. He generally

spent all of his workday either in the fleets or performing repair work on barges that were moored alongside the dock.

On the date of his injury, Roberts was taken on the welding flat, which was pushed by a tug, to one of the fleets and climbed from the flat onto a barge that needed a stationary rigging wire. The flat was held against the barge by the tugboat. Another welder, Justin Graham, was lifting the new wire from the flat up to Roberts on the barges. Roberts squatted down and had one arm around the wire to pull up on the wire with Graham's assistance. The pilot, however, allowed the flat to start drifting away from the barge, and Graham had to release the wire to avoid falling into the river. Roberts jerked up the wire, taking its full weight, before the deckhand standing beside him was able to help get the wire to the deck of the barge. Roberts felt a sharp pain in his back as he jerked up the wire.

Roberts brought this action pursuant to the Jones Act, 46 U.S.C. § 30104, and the general maritime law of the United States. Ingram argues that Roberts cannot recover under the Jones Act because he was not a seaman. Ingram also argues that Roberts cannot recover under general maritime law because he was not a seaman.

## STANDARD

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. J. C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). The plaintiff must present more than a mere scintilla of evidence in support of his position; the plaintiff must present evidence on which the trier of fact could reasonably find for the plaintiff. *See id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). Mere speculation will not suffice to defeat a motion for summary judgment: "the mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Moinette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996).

DISCUSSION

*A.     Jones Act Claim*

The Jones Act provides that "[a] seaman injured in the course of employment . . . may elect to bring a civil action at law, with the right of trial by jury, against the employer." 46 U.S.C. § 30104. The question of who is a "seaman" is a mixed question of law and fact. *McDermott Int'l, Inc. v. Wilander*, 498 U.S. 337, 356 (1991). When the facts and law are undisputed, "the issue is whether the facts meet the statutory standard." *Id.* If reasonable persons, applying the proper legal standard, could differ as to whether Roberts was a "seaman," it is a question for the jury. *See id.* But, "summary judgment . . . is mandated where the facts and the law will reasonably support only one conclusion." *Id.*

In *Chandris, Inc. v. Latsis*, 515 U.S. 347 (1995), the Supreme Court held that the two

3

essential requirements for seaman status are (1) that "an employee's duties must 'contribut[e] to the function of the vessel or to the accomplishment of its mission,'" and (2) that the employee "must have a connection to a vessel in navigation (or to an identifiable group of such vessels) that is substantial in terms of both its duration and its nature." *Id.* at 368 (citations omitted).  The Court explained that "[t]he fundamental purpose of this substantial connection requirement is to give full effect to the remedial scheme created by Congress and to separate the sea-based maritime employees who are entitled to Jones Act protection from those land-based workers who have only a transitory or sporadic connection to a vessel in navigation, and therefore whose employment does not regularly expose them to the perils of the sea." *Id.*

Ingram does not dispute that Roberts's duties contributed to the function of its vessels, that Roberts had a connection to an identifiable fleet of its vessels, or that Roberts's connection to the vessels was substantial in duration.  Ingram's only argument is that Roberts was not a seaman because his connection to the fleet of vessels was not substantial in nature since his duties did not expose him to the perils of the sea.  In response, Roberts states that he faced hazards such as (1) the dangers associated with the movement of the vessels in the water as a result of the movement of the water generally and from wind; (2) trip-and-fall hazards associated with walking on the decks of the barges due to the presence of deck fittings, ratchets, and rigging, and slip hazzards caused by inclement weather; (3) hazards of falls overboard while exposed to the river; (4) dangers of walking from barge to barge in the fleet; and (5) dangers of injury while handling lines.  Ingram does not dispute that Roberts faced these hazards, instead it states that these hazards are those faced by longshoreman who load and unload barges at docks every day, not special maritime hazards or disadvantages that seamen face.

The Court finds that Roberts was not a seaman because his duties did not expose him to the perils of the sea. "The Jones Act remedy is reserved for sea-based maritime employees whose work regularly exposes them to 'the special hazards and disadvantages to which they who go down to sea in ships are subjected.'" *Chandris*, 515 U.S. at 370 (citation omitted). Roberts was not subjected to the special hazards and disadvantages to which seaman are subjected. *See Lara v. Arctic King Ltd.*, 178 F. Supp.2d 1178, 1182 (W.D. Wash. 2001) (special hazards and disadvantages of being a seaman include the need to fight fires without outside assistance, the need to abandon ship, the need to survive exposure to the elements until help arrives, potential delay or inconvenience in being transported to medical attention for injuries, and being stuck on a vessel under the control of its Master and operator for extended periods until the next port call). The hazards Roberts states he faced do not rise to the level of the special hazards and disadvantages faced by seaman; they are hazards that longshoremen commonly encounter. Therefore, Roberts was not a seaman.

    B.    *General Maritime Law Claim*

Roberts also sued Ingram for unseaworthiness under the general maritime law of the United States. Ingram argues that because Roberts was not a seaman, he cannot recover for unseaworthiness. Roberts does not respond to this argument.

The duty to provide a seaworthy ship is owed only to seamen. *See Yamaha Motor Corp., U.S.A. v. Calhoun*, 516 U.S. 199, 208 n.6 (1996); *Park v. Stockstill Boat Rentals, Inc.*, 492 F.3d 600, 604 (5th Cir. 2007). Because Roberts was not a seaman, he may not bring a claim for unseaworthiness under general maritime law.

## CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment is GRANTED.

An appropriate order shall issue.